# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY RAY WALTERS, | : | CIVIL NO. 1:13-CV-02275 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

The plaintiff, Jeffrey Walters ("Walters"), proceeding *pro se*, brings this civil action pursuant to 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations. In addition, Walters raises several state law claims. Pending before me are three motions to dismiss filed by the defendants pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I recommend that the motions be granted.

## I.   Procedural History.

On August 29, 2013, Walters initiated this action by filing a *pro se* complaint against the following eight defendants: (1) the Pennsylvania State Police ("PSP"); (2) Jared Hahn ("Hahn"), a PSP Trooper; (3) Jeremy Baluh ("Baluh"), a PSP Trooper; (4) FNU Webb, a PSP Trooper; (5) FNU Eshelman, a PSP Trooper; (6) FNU Shanahan, a PSP Corporal; (7) Dauphin County EMA 911; and (8) East

Hanover Township.[1]  *Doc.* 1.  Shortly after filing his complaint, Walters also paid the filing fee.  *Doc.* 2.

In his complaint, *Doc.* 1, Walters alleges that around 1:30 a.m., on September 09, 2011, he was driving along Route 743 in East Hanover Township.[2] He claims that he was not driving under the influence of drugs or alcohol, and he was not tired.  During the previous evening, however, the area received substantial rainfall causing the Swatara Creek to flood and spill onto the roadways.  While driving along Route 743, Walters saw a sign stating that the road was closed five miles ahead.  Despite seeing the sign, Walters continued driving in the same direction.  Within three and one-half miles, Walters ran into an area that had flooded along the road and his car became submerged in flood water.

While his car was sinking, Walters managed to dial 9-1-1 on his cell phone to provide his location.  Walters, however, lost communication when he exited his car and jumped into the Swatara Creek.  Furthermore, Walters lost his cell phone in the water.

According to Walters the flood waters were approximately six feet deep. The waters washed him into a tree line where he was able to grab hold of a branch

---

[1]   Hahn, Baluh, Webb, Eshelman, and Shanahan will be collectively referred to as the "PSP defendants."

[2]   In accordance with the Rule 12(b)(6) legal standard, I will accept all factual allegations as true and construe the complaint in the light most favorable to Walters.  *See, infra*, Part II.

and shout out for help.  Walters shouted for help, for approximately 45 minutes. Someone nearby heard Walters' calls for help and, in turn, that person called Susquehanna Township River Rescue to provide assistance.  Hahn, Baluh, and "more than several troopers" joined the River Rescue team.

Once Walters was brought to shore, "three Pennsylvania State Police" surrounded him.  Walters further claims that he was shivering and had difficulty speaking; yet, he was not provided any care. Instead, Hahn, who would later testify at a hearing that he did not smell any alcohol, required Walters to undergo a breathalyzer test.  Thereafter, Walters inquired about why the road was not being barricaded to prevent the same thing from happening to other drivers.  Baluh, however, allegedly responded in a threatening manner, told Walters not to question his authority, and called Walters a "dumb son of a bitch" who was wasting their time.  Furthermore, "a Trooper," presumably Hahn, *see Doc.* 1 at ¶¶ 25, 27, handcuffed Walters behind his back. Baluh then pushed Walters into the backseat of a patrol car and drove him to the "Mainstay Suites."  During the drive, Walters was not wearing a seatbelt and Baluh drove at a "dangerously" high rate of speed. For the next several days, Walters suffered neck pain.

Following this incident, on September 13, 2011, Walters was cited for failing to drive at a safe speed.  Walters alleges that the citation was falsified, because the weather conditions noted on the citation were inaccurate.  Moreover,

3

on November 8, 2011, Walters was found not guilty of the cited violation.

Reading these factual allegations in full context, I liberally construe Walters' complaint to include (1) a *Monell* claim against the PSP for failing to train, supervise, investigate, and discipline its officers; (2) constitutional claims against the PSP, Hahn, and Baluh, for false imprisonment, false arrest, malicious prosecution, malicious abuse of process, and excessive force; (3) a Fourth Amendment unlawful search and seizure claim against Hahn and Baluh; (4) conspiracy claims against the PSP and the PSP defendants pursuant to 42 U.S.C. §§ 1983 and 1985; (5) state law tort claims against Hahn and Baluh for intentional infliction of emotional distress and endangerment; (6) a constitutional claim for failing to intervene against "several troopers"; (7) a state law claim against Dauphin County EMA 911 and East Hanover Township for negligent repair and control of the roadways; and (8) a state-law negligence claim against Dauphin County EMA 911 with respect to its handling of his 9-1-1 phone call.  In addition, while it is unclear, Walters apparently seeks to either bring a private cause of action against, or impose criminal liability upon, Hahn for "intentionally falsifying" the aforementioned traffic citation.  By way of remedy, Walters seeks compensatory damages, punitive damages, declaratory relief, and injunctive relief.

On November 27, 2013, the PSP and PSP defendants, East Hanover Township, and Dauphin County EMS 911 filed motions to dismiss.  *Docs.* 8, 9,

and 10.   On December 11, 2013, the corresponding briefs-in-support were timely filed.   *Docs.* 11, 12, and 13.   On December 13, 2013, I ordered Walters to file a comprehensive brief-in-opposition, and, on January 27, 2014, Walters complied. *Doc.* 17.   Thereafter, only Dauphin County EMA 911 filed a reply brief.   *Doc.* 18. The briefing period having since closed, the motions are ripe for disposition on the merits.

## II.   <u>Legal Standards.</u>

Federal Rule of Civil Procedure 12(b) enumerates several potential bases for dismissal of an action: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process or service of process, failure to state a claim upon which relief may be granted, and failure to join an indispensable party.   Fed.R.Civ.P. 12(b).   When a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction first. *Tolan v. United States*, 176 F.R.D. 507, 509 (E.D. Pa. 1998).

### A. Rule 12(b)(1).

Accordingly, turning to the issue of jurisdiction first, Rule 12(b)(1) of the Federal Rules of Civil Procedure is the proper tool by which parties may challenge a federal court's subject matter jurisdiction. *See Pa. Protection and Advocacy, Inc. v. Houston*, 136 F.Supp.2d 353, 359 (E.D. Pa. 2001); *see also Gallethin Realty*

*Dev., Inc. v. BP Products of N. Am.*, 163 F. App'x 146, 149 (3d Cir. 2006). Because the federal courts are courts of limited jurisdiction, if subject-matter jurisdiction is lacking, the case must be dismissed.

Parties seeking to have a case dismissed for lack of subject-matter jurisdiction may present "either as a facial or factual challenge." *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (holding modified on choice of law grounds in *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)); *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A party challenges subject matter jurisdiction "in fact" when he or she disputes the existence of jurisdictional facts alleged in the complaint. *Pa. Protection*, 136 F.Supp.2d at 359. Notably, when "reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176. The plaintiff bears the burden of proof in establishing jurisdiction. *Moretnsen v. First Fed. Sav. Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). By contrast, when the challenge is facial, "the court must only consider the allegations of the complaint ... in the light most favorable to the plaintiff." *Gould*, 220 F.3d at 176; *see also Mortensen*, 549 F.2d at 891 ("[T]he court must consider the allegations of the complaint as true.").

**B. Rule 12(b)(6).**

Assuming that the Court has the power and authority – i.e. jurisdiction – to hear a case, Rule 12(b)(6) provides that a complaint may be also dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that a claim is facially plausible so as to permit a District Court to draw the reasonable inference that a defendant is liable for the alleged misconduct. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In other words, a plaintiff must plead more than the mere possibility of relief to survive a motion to dismiss. To accomplish this task "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). Indeed, following *Iqbal* and *Twombly*, a plaintiff must now show that the allegations of his or her complaint are plausible. *Iqbal*, 556 U.S. at 677-78; *Fowler*, 578 F.3d at 211 ("A complaint has to 'show' entitlement with its facts.")(citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).

With respect to the role of a District Court placed in the position of reviewing a plaintiff's complaint in connection with the federal pleading standard, it must conduct a two-part analysis. *Fowler*, 578 F.3d at 210. First, the factual and legal elements of a claim should be separated. *Id.* The District Court must accept all of the plaintiff's well-pleaded facts as true, but shall disregard any legal conclusions. *Id.* (citing *Iqbal*, 556 U.S. at 678); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *Baraka*, 481 F.3d at 195. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 210 (citing *Iqbal*, 556 U.S. at 678). "This 'plausibility' determination will be a 'context-specific task that requires the [District Court] to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Additionally, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

## III.   Discussion.

### A. Eleventh Amendment Sovereign Immunity.

The PSP, a state agency, argues that Walters' claims against it are barred by Eleventh Amendment sovereign immunity.  The PSP defendants argue the same with respect to Walters' claims against them, in their official capacities.  *Doc.* 12 at 5-6.  Where sovereign immunity applies, a federal court is stripped of subject matter jurisdiction.  *See Hans v. Louisiana*, 134 U.S. 1, 15-16 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194–95 (3d Cir. 2008); *Johnson v. U.S. Attorneys*, CIV. A. 10-1643, 2010 WL 2991409, at *2-*3 (E.D. Pa. July 27, 2010).

Indeed, in this matter, Walters files claims against the PSP and the PSP defendants in their official capacities.  By way of remedy, Walters seeks to recover damages and injunctive relief against the defendants.  Furthermore, in opposing the dismissal motion filed by the PSP and PSP defendants, Walters asserts no defense; instead, he argues that the defendants are not entitled to *qualified* immunity.  *Doc.* 17 at 6-9.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

CONST. Amend. XI. "It is well-settled as a matter of judicial construction that despite its limited and seemingly unambiguous language, the Eleventh Amendment constitutionalizes a much more far-reaching principle of state sovereign immunity." *Everett v. Schramm*, 772 F.2d 1114, 1118 (3d Cir. 1985)(citations omitted). Thus, in *Hans*, the Supreme Court held that the Eleventh Amendment prohibits a federal court from hearing a suit brought against a state by *its own* citizens, absent the state's consent. Extending this principle further, it has also been held that where a state agency or department is named as defendant, that too is considered a suit against the state which is barred by the Eleventh Amendment. *Everett*, 772 F.2d at 1118 (citing *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147 (1981)). Similarly, where state officials are named as defendants, "[t]he general rule is that relief sought nominally against a [state] officer is in fact against the sovereign if the decree would operate against the latter." *Id.* (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). This is all true regardless of whether suit is brought under federal law, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996), or state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

The doctrine of Eleventh Amendment sovereign immunity, however, is not absolute. The Amendment does not bar such suits where the state has waived its

immunity, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), or where Congress has validly abrogated the state's immunity under the Fourteenth Amendment, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).  Similarly, while "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter" *Gordon*, 373 U.S. at 58, there are certain exceptions.  Of vast import: where a suit seeks *prospective* injunctive relief *against a state official* for action contrary "to the supreme authority of the United States," it is not deemed a suit against the sovereign.  *Everett*, 772 F.2d at 1118 (quoting *Ex parte Young*, 209 U.S. 123 (1908)).  This so-called "stripping doctrine" has been limited to suits for prospective injunctive relief; the federal courts have no jurisdiction to award retrospective monetary relief in such cases.  *Id.* at 1118-19 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).  Moreover, this "stripping doctrine" has no applicability to claims brought against states or their agencies.  *See Stine v. Pennsylvania State Police*, No. 1:09-CV-0944, 2010 WL 4514326, at *4 n. 4 (M.D. Pa. Nov. 2, 2010)(Conner, C.J.)(noting the same).  Additionally, since state officials sued in their *individual* capacities are "persons" within the meaning of § 1983, the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in said capacity. *See Hafer*, 502 U.S. at 31.

Here, the Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity, *see* 42 Pa. Cons. Stat. Ann. § 8521–22, and Congress, through the enactment of 42 U.S.C. § 1983, did not expressly abrogate the States' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accordingly, in this matter, the Eleventh Amendment provides a jurisdictional bar to all of Walters' claims against the PSP, which is an arm of the Commonwealth. *See Stine*, *supra* (noting also that the Pennsylvania State Police is an arm of the Commonwealth)(citations omitted). Furthermore, Walters' claims against the PSP defendants in their official capacities, for retrospective monetary relief, are similarly barred. *See Atkin v. Johnson*, 432 F.App'x 47, 48 (3d Cir. 2011)(per curiam)(summarily affirming the District Court's determination that the Eleventh Amendment bars claims for damages against the PSP and a State Trooper named in his official capacity). Walters' claims for monetary damages against the PSP defendants in their individual capacities, and for prospective injunctive relief against the PSP defendants in their official capacities, should proceed.

**B. Claims Brought Pursuant to 42 U.S.C. § 1983.**

Having addressed the Eleventh Amendment sovereign immunity issue, 42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under this section, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  As the Third Circuit has explained: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

Here, the PSP defendants do not dispute that they were acting under color of state law.  Thus, after identifying the contours of his claims, whether Walters' § 1983 claims should proceed depends upon whether he has sufficiently pled facts to show that constitutional violations occurred.

13

## 1. Personal Involvement.

As an initial matter, however, Walters names Webb, Eshelman, and Shanahan as defendants, but he fails to provide any facts plausibly suggesting their involvement with any of the alleged constitutional violations.  In fact, other than naming these defendants in the caption, the list of defendants, and the prayer for relief, no mention is made about these defendants in the body of the complaint. Accordingly, Webb, Eshelman, and Shanahan argue that any claim being brought against them pursuant to 42 U.S.C. § 1983 should be dismissed for Walters' failure to plausibly show their personal involvement.  *Doc.* 12 at 8-9.  I agree.

It is fundamental that a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  *Id.*  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.  *Id.*

The same is true with respect to claims against a supervisor; plaintiffs, in general, must plausibly show more than *respondeat superior* liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).  A supervisor, however,

may also be held liable under § 1983 if it is shown that he or she "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The Third Circuit developed this latter test based on the Supreme Court's reasoning in *City of Canton v. Harris*, 489 U.S. 378 (1989).

Under the *City of Canton* regime, to hold a supervisor liable because his policies or practices led to a constitutional violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and allege that: (1) the existing policy or practice created an unreasonable risk of the constitutional injury; (2) the supervisor was aware that the risk was created; (3) the supervisor was indifferent to that risk; and (4) the constitutional injury resulted from the policy or practice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

According to the Third Circuit, one way – "perhaps the easiest way" – a plaintiff can make out a supervisor liability claim is by alleging that "the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Id.* (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (1989)). In fact, "[n]ormally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions." *Sample*, 885 F.2d at 1118. "But that is not the only way to make out such a claim 'as there are situations in which the risk of constitutionally cognizable

harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk … and of indifference to it.'" *Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118).

Given these exacting standards, it is not enough under *City of Canton* for a plaintiff to allege that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. *Sample*, 885 F.2d at 1118. Instead, the federal courts insist that the plaintiff identify specifically what it is that a defendant failed to do that evidences his or her deliberate indifference. *Id.* "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.*

In the case *sub judice*, Walters has not alleged any facts showing personal involvement on part of Webb, Eshelman, or Shanahan. Furthermore, to the extent that Walters intends on raising a supervisor-liability claim, he has not sufficiently alleged that any of these defendants, in a supervisory capacity, established and maintained a policy, practice or custom which directly caused constitutional harm. As well, under *City of Canton*, Walters has similarly failed to plausibly show entitlement to relief against them. Thus, these defendants should be dismissed

from the complaint as there are no other claims raised against them.

## 2. Fourth Amendment Claims.

Next, pursuant to the Fourth Amendment, Walters raises claims against Hahn and Baluh for an unreasonable search, false arrest, false imprisonment, malicious prosecution, and abuse of process. In moving to dismiss these claims, Hahn and Baluh contend that Walters fails to state a claim. *See Doc.* 12 at 9-11.[3]

### a. Unreasonable-Search Claim.

The Fourth Amendment guarantees the "right of the people to be secure in their persons ... against *unreasonable* searches and seizures." U.S. CONST. Amend. IV (emphasis added). As the text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, … reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist. 47 J v. Acton*, 515 U.S. 646, 653 (1995). In the absence of a warrant, however, the Supreme Court

---

[3]     I do not construe the defendants' motion to include arguments attacking the sufficiency of Walters' Fourth Amendment claims for false arrest, false imprisonment, and excessive force. Rather, the substance of the motion, based on a plain reading of the defendants' supporting brief, concerns Walters' claims for unreasonable search of his person, unreasonable seizure of his property, malicious prosecution, and abuse of process. *Doc.* 12 at 9-11. Consequently, Walters' claims for false arrest, false imprisonment, and excessive force will not be addressed herein; therefore, those claims should proceed.

instructs that warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. *Kentucky v. King*, 131 S.Ct. 1849, 1858 (2011).

In this matter, Walters complains that Hahn subjected him to an unreasonable search through the use and implementation of a breathalyzer test, without probable cause.[4]  In moving to dismiss this claim, Hahn contends that the breathalyzer test was not only authorized pursuant to Pennsylvania law, but that a pre-arrest breathalyzer test may be used to determine whether probable cause exists to prosecute an individual for driving while intoxicated. *Doc.* 12 at 10.  As well, Hahn notes that Walters' complaint contains allegations that he was shivering, had difficulty with his speech, and had difficulty standing.  *Id.* (citing *Doc.* 1 at ¶ 23). Thus, Hahn argues, Walters fails to state a claim, because the search was "reasonable."

In the Fourth Amendment context, breathalyzer tests typically constitute a search and are therefore subject to the strictures of the Amendment's prohibition of unreasonable searches.  *See Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-

---

[4]     While Walters apparently attempts to raise this same claim with respect to Baluh, *see Doc.* 1 at ¶ 31, it is clear from the allegations contained in the complaint that this claim only relates to Hahn, who purportedly administered the breathalyzer test. *Id.* at ¶ 23.  Also, this is the only "search" specifically referred to in the body of the complaint.  While Walters states in Paragraph 23 that his property was unreasonably searched, he provides no factual allegations to support that threadbare claim. The same is true with respect to his claim that his property was unreasonably seized; there are no supporting factual allegations.

17 (1989)(stating in *dictum* that the subjection of a person to a breathalyzer test constitutes a search). While subject to the Fourth Amendment's strictures, "[breathalyzer] tests are generally permitted without a warrant because 'the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system,'" *Jawien v. County of San Bernardino*, No. 10-9501, 2012 WL 1204090, at *4 (C.D. Ca. Feb. 29, 2012)(quoting *Schmerber v. California*, 384 U.S. 757, 770 (1966)), and they are accepted as reasonable searches, *id* (citing *Skinner*, 489 U.S. at 625-26 (breathalyzer tests are in fact less intrusive than blood alcohol tests because "they do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment")).  Thus, while Hahn's statement of Pennsylvania law appears accurate, it does not address the precise issue before the Court, which is whether the breathalyzer test here was, in fact, reasonable or in violation of the Fourth Amendment.  Yet, I agree that Walters fails to state a claim, because he provides insufficient allegations to plausibly show how or why the administration of the breathalyzer test in his case was unreasonable. Rather, accepting the allegations as true, the only reasonable inference that can currently be drawn from Walters' complaint is that the search was, in fact, reasonable given that he exhibited signs of impairment, the underlying events in this case are alleged to have occurred around 1:30 a.m., and Walters, as

he alleges, had just sunk his car along a road that contained a sign warning him that the upcoming road was closed.  Hence, the breathalyzer test cannot be said, on these allegations, to have been unreasonable, and this claim should be dismissed.

### b.  Malicious-Prosecution Claim.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court set the framework for § 1983 malicious prosecution jurisprudence.  While the Court did not decide whether Albright asserted a viable malicious-prosecution claim, the Court held that the claim must be judged under the strictures of the Fourth Amendment, not the Fourteenth's Due Process Clause.  510 U.S. at 271.  Since *Albright*, the Third Circuit has delineated the elements that a plaintiff must show in order to succeed on a claim brought pursuant to 42 U.S.C. § 1983 for malicious prosecution.  Accordingly, to prevail in a § 1983 action for malicious prosecution, the plaintiff must plausibly show:

> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in the plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Walters' claim is unclear.  He alleges that he was "prosecuted … for drunkenness and DUI without requisite probable cause," *Doc.* 1 at ¶ 31; however, his complaint demonstrates that he was only subjected to a criminal proceeding with respect to the citation for failing to drive at a safe speed.  Moreover, there are no allegations that any proceeding which may have been initiated against him for DUI or drunkenness ended in his favor, much less that any such proceeding was initiated without probable cause, that the defendants (specifically, Hahn and Baluh) acted maliciously, or that he suffered a deprivation of liberty.

In addition, Walters includes a malicious-prosecution claim with respect to the citation he received for failing to drive at a safe speed.  Walters, though, still fails to state a claim, as the PSP defendants contend.  In particular, Walters fails to plausibly show that the PSP defendants acted maliciously or for a purpose other than bringing him to justice.  Of course, he pleads facts demonstrating that he was not treated in the most positive manner at the scene, but that fails to *plausibly show* how the defendants acted maliciously with respect to the issuance of the citation, three days after the defendants' contact with him.

Furthermore, while the PSP defendants do not raise this particular point when attacking the sufficiency of this claim, it is also questionable whether Walters has plausibly shown that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Indeed,

Walters provides no allegations, other than claiming that he was handcuffed and subsequently dropped off somewhere, that any restrictions were imposed upon him such as having to post bail, having his travel limited, or having to report to pretrial services. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)(relying upon the lack of proof of similar factors in affirming the District Court's post-trial judgment that there had been no Fourth Amendment seizure as required in a malicious prosecution claim). Moreover, that Walters was restricted, in a sense, by having to attend a bench trial on his traffic citation is of no moment. The Fourth Amendment does not extend beyond the period of pretrial restrictions. *See DiBella*, 407 F.3d at 603 ("the limits of the Fourth Amendment protection relate to the boundary between arrest and pretrial detention")(quoting *Torres v. McLaughin*, 163 F.3d 169, 174 (3d Cir. 1998) and citing *Donahue v. Gavin*, 280 F.3d 371, 381 (2002)(same)). Thus, quite simply, Walters has not plausibly shown that there was a seizure plausibly demonstrating the existence of a Fourth Amendment violation in support of a § 1983 malicious-prosecution action. *See Golya v. Golya*, No. 3:05-CV-0100, 2007 WL 2301085, at *6 (M.D. Pa. Aug. 9, 2007)(Vanaskie, J.)(dismissing plaintiff's malicious-prosecution claim, on summary judgment, for plaintiff's failure to demonstrate a seizure). Walters' malicious-prosecution claim, therefore, should be dismissed.

### c. Abuse-of-Process Claim.

To obtain redress on an abuse-of-process claim brought pursuant to 42 U.S.C. § 1983 a plaintiff must show a Fourth Amendment violation in addition to the common law elements for abuse of process. *Litzenberger v. Vanim*, No. Civ. A. 01-5454, 2002 WL 1759370, at *3 (E.D. Pa. July 31, 2002); *see also Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 ... does not provide redress for common law torts - the plaintiff must allege a violation of a federal right."). Because Walters fails to plausibly show that he suffered a Fourth Amendment seizure, in connection with the traffic citation proceedings, his § 1983 abuse-of-process claim equally fails.

Even if Walters was relieved of the burden to prove a Fourth Amendment violation, Hahn and Baluh are entitled to have this claim, as currently plead, dismissed. "[A] section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Williams v. Fedor*, 69 F.Supp.2d 649, 673 (M.D. Pa. 1999), *aff'd mem.*, 211 F.3d 1263 (3d Cir. 2000). The crux of this action is the perversion of the legal process to achieve an objective other than its intended purpose. *Id.* ""When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained."" *Id.*

(quoting *Brown v. Johnston*, 675 F.Supp. 287, 290 (W.D. Pa. 1987)). To establish

such a claim, "there must be some proof of a 'definite act or threat not authorized

by the process, or aimed at an objective not legitimate in the use of [the] process.'"

*Id.* (quoting *Feldman v. Trust Co. Bank*, No. Civ. A. 93-1260, 1993 WL 300136, at

*4 (E.D. Pa. Aug. 2, 1993)).

In this matter, other than alleging that he was found not guilty of the traffic

offense, there are insufficient allegations plausibly showing that the proceedings

were perverted to achieve an illegitimate object.  Moreover, even if his allegations

are in fact true that Hahn and Baluh acted towards Walters in the manner alleged,

on the night in question, such allegations go to the initiation – not the perversion –

of the proceedings on the traffic citation.   Walters' abuse-of-process claim,

therefore, should be dismissed.

### 3. Failure-to-Intervene Claim.

In addition to alleging the facts listed in Part I of this Report, Walters alleges

generally that there were "several troopers" on the scene who failed to intervene

when they witnessed him being "prosecuted"[5] for drunkenness and DUI.  *Doc.* 1 at

¶ 38.  In moving to dismiss this claim, the PSP defendants argue that Walters fails

---

[5]    I construe Walters' use of the term "prosecuted" to refer to his being
subjected to a breathalyzer test on the night at issue.  Nowhere in the complaint
does Walter allege that he was formally charged with drunkenness or DUI and
subjected to legal process.  Furthermore, I do not construe Walters' complaint to
include a claim for the "troopers'" failure to intervene when he was allegedly
subject to excessive force.  *But see*, footnote 6, *infra*.

to identify the troopers to which he is referring and similarly fails to demonstrate the existence of a constitutional violation. *Doc.* 12 at 12-13; *accord id.* at 12 n. 7.

To state a valid § 1983 claim for failing to intervene, a plaintiff must show that an officer had a reasonable opportunity to intervene in the face of a constitutional violation and (s)he simply refused to do so. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Importantly, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651 (citations omitted). Furthermore, it is well-established that an officer cannot escape liability by relying upon his or her inferior or non-supervisory rank vis-à-vis the other officers. *Id.* at 650, 651.

As mentioned, the PSP defendants argue that Walters fails to identify the troopers who allegedly failed to intervene. In his opposition brief, however, Walters references Webb, Eshelman, and Shanahan. *Doc.* 17 at 4. Unfortunately for Walters, "it is axiomatic that [a] complaint may not be amended by the briefs in opposition to a [motion]," *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted). In addition, Walters fails to state that a constitutional violation occurred when he was prosecuted, or breathalyzed, on the night in question. In fact, I have previously determined that Walters fails to show that the warrantless breathalyzer search was

unreasonable. Walters' failure-to-intervene claim, therefore, should be dismissed.[6]

### C. Conspiracy Claims Brought Pursuant to 42 U.S.C. §§ 1983 and 1985.

As noted by the PSP defendants, Walters references a conspiracy claim in his complaint and he cites to Sections 1983 and 1985 of Title 42 of the United States Code. The PSP defendants contend, however, that Walters fails to allege the existence of any conspiracy to support such a theory. *Doc.* 12 at 13 n. 9. I agree with the PSP defendants.

Generally, to establish a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, No. 13–1283, 2013 WL 2636643, *3 (3d Cir. June 13, 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in

---

[6] Assuming for the sake of argument that Walters is tying this failure-to-intervene claim to his constitutional claim for excessive force, the current pleading is still deficient. Other than raising allegations about his arrest – i.e. when he was handcuffed - and being pushed into the back of a patrol car, he fails to establish that the defendants here had a realistic and reasonable opportunity to intervene.

pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dist.*, Civ. No. 12–cv–2074, 2013 WL 4718920, *8 (M.D. Pa. Sept.3, 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)).   In other words, Walters must allege "some factual basis to support the existence of the elements of a conspiracy," namely the existence of an agreement and concerted action. *Id.* (citing *Capogrosso*, 588 F.3d at 184); *Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. *Savage*, 644 F.Supp.2d at 561.

In a similar sense, to state a § 1985 claim, a plaintiff must also show the existence of a conspiracy.  Additionally, a plaintiff must allege a conspiracy by the defendants: (1) designed to deprive a plaintiff of the equal protections of the laws, (2) the commission of an overt act in furtherance of that conspiracy, (3) a resultant injury to person or property or a deprivation of any right or privilege of citizens, and (4) defendant's actions were motivated by racial or otherwise class-based

invidiously discriminatory animus. *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 830 (1983).

As currently plead, Walters has not plausibly shown the existence of a conspiracy between the PSP defendants.  Other than conclusively stating that a conspiracy existed, no inference of an agreement between the defendants arises from the factual allegations.  Moreover, to the extent that the conspiracy claim relates solely to Walters' § 1983 claim for malicious prosecution, *see Doc.* 1 at ¶ 31, I have already determined that Walters fails to state a claim.  Thus, there is currently no federally protected right that is the object of any conspiracy.  Finally, with respect to the § 1985 claim, "none of [Walters'] allegations suggest that the defendants' alleged actions were motivated by racial or otherwise class-based invidiously discriminatory animus."  *Heath v. Shannon*, No. Civ. 4:04-CV-2274, 2006 WL 385093, at *3 (M.D. Pa. Feb. 17, 2006)(Jones, J.).  Accordingly, Walters' conspiracy claim brought pursuant to 42 U.S.C. §§ 1983 and 1985 should be dismissed.

### D. Claims Brought Pursuant to the Pennsylvania and United States Criminal Codes.

In this instance, Walters alleges that Hahn "intentionally falsified" the traffic citation that was issued to him, in violation of 18 Pa. C.S. §§ 4903, 4906(b) and 18 U.S.C. § 1519.  Hahn challenges these allegations. *Doc.* 12 at 13-14.

The code sections that Walters cites relate solely to the imposition of criminal liability and do not give rise to private causes of action. *See Carpenter v. Young*, No. 05-927, 2004 WL 1858353, at *3-*4 (E.D. Pa. Aug. 3, 2004)(ruling the same in a civil case where the plaintiff brought suit pursuant to 18 U.S.C. § 1519 among other criminal statutes). Accordingly, since he has no private cause of action, any claim that Walters is attempting to bring under these criminal code sections should be dismissed with prejudice.[7]

### E. Walters' State-Law Claims.

In addition to the aforementioned federal claims, Walters raises the following state-law claims: (1) intentional infliction of emotional distress and negligent endangerment against Hahn and Baluh; (2) negligent repair and control of the roadways against both Dauphin County EMA 911 and East Hanover Township; and (3) negligence against Dauphin County EMA 911 with respect to its handling of the 9-1-1 phone call that he made before River Rescue arrived.[8]

---

[7]     To the extent Walters is seeking to have Hahn investigated or prosecuted under these code sections, "a private person does not have a 'judicially cognizable interest in the prosecution [or investigation] … of another'" *Kent v. Vickers*, 481 F. App'x 709, 711 (3d Cir. 2012)(per curiam)(quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Such a claim, therefore, should equally be dismissed with prejudice.

[8]     Even upon a liberal construction of his complaint, I do not find that Walters has raised the following claims pursuant to their state law equivalents: malicious prosecution, conspiracy, abuse of process, false arrest, and false imprisonment. *See Doc.* 1 at ¶ 35.

Having recommended that Walters' Fourth Amendment claims for false arrest, false imprisonment, and excessive force proceed, I must now determine whether the Court should entertain Walters' state-law claims pursuant to the Court's supplemental jurisdiction.

### 1. Supplemental Jurisdiction.

In pertinent part, 28 U.S.C. § 1367, which establishes the supplemental jurisdiction of the Federal District Courts, provides:

> Except as provided in subsection … (c) or as expressly provided otherwise by Federal statute, in any civil action of which the [D]istrict [C]ourts have original jurisdiction, the [D]istrict [C]ourts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Section 1367 (c) of the same Title provides that District Court's may decline to exercise supplemental jurisdiction over a claim under Subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the [D]istrict [C]ourt has original jurisdiction,
>
> (3) the [D]istrict [C]ourt has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

In this matter, I have recommended that Walters' Fourth Amendment claims for false arrest, false imprisonment, and excessive force proceed.  Said federal claims give rise to the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  Accordingly, at this juncture, the supplemental-jurisdiction statute requires me to analyze whether Walters' state law claims are part of the same Article III "case or controversy" as the aforementioned Fourth Amendment claims.  This standard was explained by the Supreme Court in *United Mine Workers of America v. Gibbs*.

In *Gibbs*, the Supreme Court established three requirements that must be satisfied:

> The federal claims must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if considered without regard to their state or federal character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

383 U.S. 715, 725 (1966) (footnote and internal citation omitted).  Pursuant to this line of reasoning, a District Court may not assert supplemental jurisdiction over claims that are totally unrelated to the federal claims that form the basis of the court's jurisdiction.  *In re: Prudential Ins. Co. Am. Sales Prac. Litigation Agent Actions*, 148 F.3d 283, 302 (3d Cir. 1998)(citation omitted).  Further, as the Third Circuit explained, "§ 1367 does not permit courts to take jurisdiction over

tangentially related claims." *Id.* at 303.

With respect to Walters' state law claims against Hahn and Baluh, I believe the nexus between them and the surviving Fourth Amendment claims is so close that federal jurisdiction is appropriate.  In other words, the conduct underlying the state law claims for intentional infliction of emotional distress and negligent endangerment is inextricably intertwined with the surviving Fourth Amendment claims dealing with the treatment he received on the night in question.  Since none of the exceptions in § 1367(c) appear to apply, the Court should exercise jurisdiction over Walters' state-law claims against Hahn and Baluh.

At the same time, I find that Walters' state-law claims against East Hanover Township and Dauphin County EMA 911 do not derive from a common nucleus of operative fact as the Fourth Amendment claims recommended to survive.  While the events complained of occurred on the same night in question, the conduct underlying the state law claims for negligent repair and control of the roadways and negligence resulting from Walters' 9-1-1 phone call is only tangentially related to the conduct underlying the surviving Fourth Amendment claims.  In other words, the conduct complained of does not flow from the alleged treatment Walters received by Hahn and Baluh.  Moreover, assuming for the sake of argument that Walters' other constitutional claims were sufficiently plead so as to survive the defendants' dismissal motions, the conduct complained of in support of

those claims solely relate to the his treatment by the responding officers. As such, the underlying conduct of those federal claims would still only be tangentially related to the conduct underlying the state-law claims raised against East Hanover Township and Dauphin County EMA 911. Furthermore, Walters would not ordinarily be expected to try all of these claims together in one judicial proceeding. The Court, therefore, should not exercise supplemental jurisdiction over Walters' state-law claims against East Hanover Township and Dauphin County EMA 911.

## 2. State Sovereign Immunity.

Although I find and recommend that the Court has authority to entertain the state-law claims against Hahn and Baluh, the officers argue that the same claims are barred pursuant to the Commonwealth's sovereign immunity provisions. *Doc.* 12 at 10 n. 4. I agree.

"It is well-established under Pennsylvania law that the Commonwealth enjoys immunity from suit except when the General Assembly has, by statute, expressly waived the immunity." *Apfelbaum v. National R.R. Passenger Corp.*, No. 00-1788, 2002 WL 32342481, *2 (E.D. Pa. Oct.17, 2002) (citing 1 Pa.C.S. § 2310; *Jones v. SEPTA*, 772 A.2d 435, 438–39 (2001)). Under 1 Pa.C.S.A. § 2310, the Commonwealth of Pennsylvania has explicitly retained its sovereign immunity from suit.[9] The Pennsylvania Legislature, however, has waived sovereign

---

[9]     1 Pa.C.S.A. § 2310 provides, in relevant part:

immunity in nine limited circumstances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  *See* 42 Pa.C.S.A. § 8522(b).   Each of these exceptions is to be strictly construed.   *See Mullin v. Commonwealth, Dept. of Transp.*, 870 A.2d 773, 779 (2005).

In opposing Hahn's and Baluh's dismissal motion, Walters does not set forth any argument qualifying the conduct complained of under any of the nine exceptions.  More importantly, there are no such allegations contained in Walters' complaint.   Furthermore, this Court has previously stated that a claim for intentional infliction of emotional distress against the PSP and it's officers is barred by sovereign immunity, *see Fischer v. Pennsylvania State Police*, Civ. No. 7–1653, 2009 WL 650251 at * 12 (M.D. Pa. March 10, 2009), and Walters also provides no suggestion that either Baluh or Hahn were acting in any capacity other

---

Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity .... *See also* 42 Pa. C.S.A. § 8521(a) ("[e]xcept as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.").

than in the regular course and scope of their duties.   *See* 1 Pa.C.S.A. § 2310 (shielding from liability claims against state officials acting within the scope of their duties). Indeed, every indication from the complaint is that Hahn and Baluh were performing according to their prescribed duties.[10] Consequently, as the complaint currently reads, Hahn and Baluh are entitled to state sovereign immunity.

## IV.   <u>Leave to Amend.</u>

The Third Circuit has taken a liberal approach to granting leave to amend pleadings, observing that leave should be granted freely in order to ensure that a particular claim is decided on "the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990).   Furthermore, *pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend.   *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, dismissal without leave to amend is justified on grounds of bad faith, undue delay, prejudice, or futility. *Alston*, 363 F.3d at 235–36.

---

[10]   Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct "within the scope of employment." *See Butler v. Flo–Ron Vending Co.*, 557 A.2d 730 (Pa.Super. Ct. 1989); *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993). According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...." Restatement (Second) Agency § 228.

In this instance, there would be no undue delay and the defendants would not be prejudiced if Walters were provided with an opportunity to amend his complaint consistent with this Report and Recommendation. Furthermore, it cannot be said for certain that it would be futile to give Walters an opportunity to amend each part of his complaint, including those portions that pose jurisdictional dilemmas.   Accordingly, Walters should be granted leave to file one, final amended complaint.

If Walters chooses to amend, he shall be put on notice that "[an] amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" *West Run Student Housing Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (1996)).   Furthermore, in the event that Walters does not elect to amend his complaint, his Fourth Amendment claims against Hahn and Baluh for false arrest, false imprisonment, and excessive force, should proceed and the remaining claims be dismissed, or otherwise barred.

## V.   **Recommendations.**

Based on the foregoing, **IT IS RECOMMENDED** that:

(1) Walters' complaint (*Doc.* 1) be **DISMISSED** except as to his Fourth Amendment claims against Hahn and Baluh for false arrest, false imprisonment, and excessive force;

(2) Walters be granted leave to file one, final amended complaint consistent with this Report and Recommendation;

(3) the PSP's and PSP defendants' motion to dismiss (*Doc.* 8) be **GRANTED**, except as to the Fourth Amendment claims for false arrest, false imprisonment, and excessive force, which were <u>not</u> addressed in the motion;

(4) East Hanover Township's motion to dismiss (*Doc.* 9) be **GRANTED**; and

(5) Dauphin County EMA 911's motion to dismiss (*Doc.* 10) be **GRANTED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **7th** day of **July, 2014**.


                                        *S/ Susan E. Schwab*
                                        Susan E. Schwab
                                        United States Magistrate Judge