## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY RAY WALTERS, | : | CIVIL NO. 1:13-CV-02275 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| PENNSYLVANIA STATE POLICE, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, we recommend that Defendants' motion for summary judgment be granted.

### II. Background.

#### A. Procedural Background.

The plaintiff, Jeffrey Ray Walters ("Walters"), commenced this action by filing a *pro se* complaint against the following eight defendants: (1) the Pennsylvania State Police ("PSP"); (2) Jared Hahn ("Hahn"), a PSP Trooper; (3) Jeremy Baluh ("Baluh"), a PSP Trooper; (4) FNU Webb, a PSP Trooper ("Webb"); (5) FNU Eshelman, a PSP Trooper "Eshelman"); (6) FNU Shanahan, a PSP Corporal ("Shanahan"); (7) Dauphin County EMA 911; and (8) East Hanover

Township.  *Doc.* 1.  The PSP defendants,[1] East Hanover Township, and Dauphin County EMA 911 all filed motions to dismiss Walters' complaint (*docs. 8*, *9*, *10*), which we recommended granting except to the limited extent that Hahn and Baluh did not move to dismiss Walters' claims for excessive force, false arrest, and false imprisonment.  *Doc. 19* at 37.  We also recommended that Walters be granted leave to amend his complaint.  *Id.* at 36, 37.  Chief Judge Conner adopted our recommendations and granted Walters 14 days leave to amend.[2]  *Doc. 20* at 3.

The remaining defendants, Hahn and Baluh (collectively, the "Defendants"), have now filed a motion (*doc. 43*) for summary judgment, arguing that there are no genuine issues of material fact with respect to Walters' remaining claims and that they are entitled to judgment as a matter of law.  In the alternative, the Defendants argue that they are entitled to qualified immunity from suit.  For the reasons set forth below, we are persuaded that the Defendants are entitled to judgment as a matter of law on Walters' excessive force, false arrest, and false imprisonment claims.  Thus, we recommend that the Defendants' motion be granted and the case be dismissed in its entirety.

---

[1] The PSP defendants consist of PSP, Hahn, Baluh, Webb, Eshelman, and Shanahan.

[2] Walters, however, did not amend within those fourteen days.  In fact, it was not until November 25, 2014, that Walters sought, among other things, leave to amend his complaint.  *Doc. 26.*  Chief Judge Conner denied Walters' motion, finding that leave to amend would be frivolous.  *Doc. 27.*

## B. Factual Background.[3]

On September 9, 2011, Walters was driving his girlfriend's vehicle on Route 743 near Swatara Creek in East Hanover Township, Pennsylvania. Defs.' Statement of Material Facts, *doc. 45* ¶ 1.   In the days leading up to September 9, 2011, Walters knew there had been significant rainfall in the area and that some of the roads were flooded.  *Id.* ¶ 2.  Despite seeing a sign warning him that the road was closed ahead, Walters continued driving and submerged the car into deep floodwater. *Id.* ¶ 3.  As the car was sinking, Walters called 911, explaining that he

---

[3] Pursuant to the Local Rules for the U.S. District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The non-moving party is required to submit "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement of the material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.*  Both statements must reference the record for support, and the moving party's statement will be deemed admitted unless controverted by the non-moving party.  *See id.* Here, the Defendants, as the moving party, filed a statement of material facts (*doc. 45*), supported by adequate references to the record.  Although Walters, as the non-moving party, filed an opposition to motion for summary judgment (*doc. 47*), a memorandum of law in opposition to summary judgment (*doc. 52*), and various exhibits (*doc. 49*), he failed to include a statement of material facts, responding to the numbered paragraphs set forth in the Defendants' statement of material facts. Therefore, we will adopt the Defendants' statement of material facts. *See United States ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (adopting moving party's statement of facts where non-movant failed to comply with Local Rule 56.1), *aff'd*, 396 F.3d 326, 330 n.5 (3d Cir. 2005); *see also Larnerd v. Mong*, No. 1:14-CV-1204, 2015 WL 5601949, at *2 (M.D. Pa. 2015) ("A party's failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se*.").

was locked in his car, and his car was filling up with water.  *Id.* ¶ 4.  Walters opened the window, climbed out of the car, and was forced by the floodwater into a tree line.  *Id.* ¶ 5.  Walters hung onto a tree and called out for help as loud and as many times as he could.  *Id.* ¶ 6.  Walters thought he might die.  *Id.* ¶ 7.  River Rescue, an ambulance, fire department, the Defendants, as well as two other Troopers and a Corporal of PSP all arrived at the scene.  *Id.* ¶ 8.  River Rescue rescued Walters in a boat.  *Id.* ¶ 9.  Emergency medical staff from the ambulance approached Walters immediately after he stepped out of the boat.  *Id.* ¶ 10. Walters was shivering, had difficulty speaking and standing, and did not feel he was very coherent because his mental capacity was distorted at that time.  *Id.* ¶ 11. Baluh performed a preliminary breath test on Walters, which was negative.  *Id.* ¶ 12.  Walters was then free to leave.  *Id.* ¶ 13.  Walters was never told he was under arrest, and he was never given a Miranda warning.  *Id.* ¶ 14.  Walters claims that he believed he was not free to leave, but he also claims that he did not want to leave the scene alone because he would have had to walk down the highway in the middle of the night at 1:30 or 2:00 in the morning.  *Id.* ¶ 15.   Walters asked the Defendants to take care of him and get him home safely.  *Id.* ¶ 16.  The troopers told him they were not going to transport him the forty miles or so to his home in Lancaster, but they would drive him to a nearby hotel.  *Id.* ¶ 17.  It is policy that everyone being transported in the rear of a police vehicle must first be patted down

4

and restrained behind the back for safety purposes.  *Id.* ¶ 18.  Hahn cuffed Walters behind his back and led him to the police vehicle.  *Id.* ¶ 19.  In order to place Walters into the rear of the vehicle, Hahn made contact with Walters' chest and guided him backward onto the seat.  *Id.* ¶ 20. Walters testified that "it wasn't a forceful push[.]"  *Id.* ¶ 21.  Walters further testified that "[a]gain, when I say push, I don't mean an extremely forceful push, but it was enough, you know to get you in the back of the car" and "it's very awkward to get into anything with your arms behind your back."  *Id.* ¶ 22.  No one else used any other force against Walters.  *Id.* ¶ 23.  Baluh was not involved in getting Walters into the rear of the police vehicle. *Id.* ¶ 24.  Walters was not belted in, and he rearranged himself on the seat.  *Id.* ¶ 25. Pennsylvania law does not require adult persons traveling in the rear seats of vehicles to be restrained by seat belts.  *Id.* ¶ 26.  When they arrived at a nearby hotel, Hahn opened the door to the police vehicle for Walters, removed the handcuffs, and the Troopers drove off.  *Id.* ¶ 27.  Days later, Walters received a traffic citation in the mail for driving at an unsafe speed on September 9, 2011.  *Id.* ¶ 28.  Following the hearing for the traffic citation, Walters was found "not guilty" of driving at an unsafe speed.  *Id.* ¶ 29.

### III. Summary Judgment Standard.

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  *Id.* at 248-49.  When "faced with a summary judgment motion, the

7

court must view the facts 'in the light most favorable to the nonmoving party.'"
*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)
(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323. "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the

pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Discussion.

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2002). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, the parties do not dispute that the Defendants were acting under color of state law, and therefore, the next step in evaluating Walters' § 1983 claims is to "'identify the exact contours of the underlying right said to have

been violated' and to determine 'whether [Walters] has alleged a deprivation of a constitutional right at all.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))).

## A. Excessive Force.[4]

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Wilson*, 413 F.3d 382, 386 (3d Cir. 2005) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Stated differently, "no seizure has occurred if 'a reasonable person would feel free to disregard the police and go about his business, or ultimately whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter . . . .'" *Id.* (quoting *United States v. Kim*, 27 F.3d 947, 951 (3d Cir. 1994) (internal

---

[4] Before setting forth our recommendations as to Walters' remaining claims of excessive force, false imprisonment, and false arrest, we note that Walters' memorandum of law in opposition to the Defendants' motion for summary judgment (*doc. 52* at 3) is 26 pages long, but that his heading titled, "False Arrest, False Imprisonment, Excessive Force, and Search and Seizure," does not appear until page 20. *See doc. 52* at 22. We further note that the factual allegations contained in the preceding 20 pages of his memorandum are, or at least appear to be, largely immaterial and swathed in bald assertions.

citations omitted)).

"The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal quotation marks omitted). Courts examine an excessive force claim "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[I]f a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial." *Kopec*, 361 F.3d at 776. "Factors to consider in making a determination of reasonableness include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2005) (quoting *Graham*, 490 U.S. at 396). Although "[t]he reasonableness of the use of force is normally an issue for the jury," *Rivas*, 365 F.3d at 198, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Abraham*, 183 F.3d at 290 (quoting *Scott v. Henrich*, 39 F.3d 912,

915 (9th Cir. 1994)).

Here, even assuming a seizure had occurred, no issue of material fact exists as to whether the force employed by the Defendants was unreasonable. Walters asserts excessive force on the basis that he was placed in handcuffs. Walters Dep. 94:19-21, Mar. 10, 2015. Walters, however, has not pointed us to any evidence that the handcuffs were too tight or that they caused him pain or physical injury. *Cf. Kopec*, 361 F.3d at 77 (finding excessive force, pursuant to the Fourth Amendment, where arrestee repeatedly requested to have handcuffs loosened and suffered permanent nerve damage to wrist). Thus, "[t]he minimal physical coercion of placing [Walters] in the handcuffs for transport is insufficient to support a claim of excessive force under the Fourth Amendment." *Zabresky v. Von Schmeling*, No. 3:12-0020, 2013 WL 315718, at *8 (M.D. Pa. 2013).

Walters also alleges excessive force on the basis that he was "pushed" into the police vehicle. *Doc. 1* ¶ 25. As acknowledged by Walters in his own deposition, however, that "[the push] wasn't a forceful push, but . . . you know—it's very awkward to get into anything with your hands behind your back." Walters Dep. 64:24-65:2. He further acknowledged, "[a]gain, when I say push, I don't mean an extremely forceful push, but it was enough, you know to get you in the back of the car." *Id.* at 65:23-25. And, as instructed by the Supreme Court of the United States, "[n]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, [*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)] violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Thus, the minimal, but necessary, contact that was made with Walters' chest, in order to physically escort him into the rear of police vehicle was not excessive; it was objectively reasonable under the circumstances.

Additionally, Walters alleges excessive force on the basis that during his transport to the hotel, the police vehicle was driven at "a dangerously high speed on the hilly and curvy road." *Doc. 1* ¶ 25.  Although Walters has pointed us to the deposition testimony of Baluh, where he testified that driving 75 miles an hour in a 55 mile per hour zone "can be" a safe speed (Baluh Dep. 65:20-24, Mar. 10, 2015), Walters has not pointed us to any evidence that the Defendants were in fact driving 75 miles per hour on September 9, 2011, the night of the alleged violations, nor has Walters pointed us to any evidence that he was jerked around in the rear of the police vehicle during his transport to the nearby hotel. Thus, we find under the objective reasonableness standard of the Fourth Amendment that Walters has not made out a claim of excessive force.  *See Hughes v. Shestakov*, 76 F. App'x 450, 452 (3d Cir. 2003) (affirming the district court's grant of summary judgment in favor of the defendants, since the plaintiff did not establish excessive force, where officers escorted plaintiff into the back

of the police van, bumped his head on the van, jerked his shoulders, and gave him a "rough ride" to the police station).

Moreover, Walters asserts "verbal abuse" as a basis for excessive force. Walters Dep. 94:18-19.   Specifically, Walters testified that he was called a "dumb son of a bitch," who was "wasting [the troopers'] time." *Id.*   60: 17-21. Having found that the physical force in this context was objectively reasonable, Walters' additional assertions of verbal abuse cannot and do not transform his case into an unconstitutional use of force. *Periera v. Lizzio*, No. 3:09-CV-1024, 2012 WL 1205750, at *2 (M.D. Pa. 2012) ("When making a claim of excessive force [under the Fourth Amendment], if the physical force used is not excessive, then merely adding verbal threats cannot convert it into an unconstitutional use of excessive force.").[5]

Thus, even drawing all inferences in the light most favorable to Walters, we conclude that, under the totality of the circumstances, the Defendants'

---

[5]  As a final note, Walters has pointed (*doc. 52* at 8) to Paul Rudewicz's ("Rudewicz") testimony, which describes the statements he (Walters) made to Rudewicz on September 10, 2011, a day after the events in question; those statements are as follows: "Then [Walters] went on saying about the state police cuffing him, throwing him into the car, and then flying out 743 at an excessive speed."  Rudewicsz's Dep. 27:5, 28:19-24, Mar. 9, 2015.  Since Walters may not rely upon inadmissible hearsay assertions to avoid summary judgment, *see Shelton v. University of Medicine & Dentistry of N.J.*, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing *Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995), we have not taken this assertion into consideration in ruling upon the Defendants' motion for summary judgment.

actions were objectively reasonable. Accordingly, we recommend granting summary judgment in favor of the Defendants with respect to Walters' claim for excessive force.

### B. False Arrest and False Imprisonment.

Even assuming the Defendants participated in constitutionally impermissible conduct, the Defendants, as government officials, "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful.  *Id.* "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Harlow*, 457 U.S. at 818-19.

The qualified immunity analysis has two prongs.  *Pearson*, 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or

shown make out a violation of a constitutional right. *Id.* The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson*, 555 U.S. at 236. So the court may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). Because this inquiry focuses on the official's actual situation, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier,* 533 U.S. at 201). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). If the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is

appropriate.  *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009).  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

Here, even if Walters could maintain claims for false arrest and false imprisonment, the Defendants are nevertheless entitled to qualified immunity because it was not clearly established at the time the Defendants acted that handcuffing an individual during that individual's voluntary transport to a nearby hotel was unlawful, where policy required such handcuffing for safety purposes during transport.  Given the specific context of this case—including the undisputed facts (1) that Walters was never told he was under arrest, (2) that he was never given a Miranda warning, (3) that after he was free to leave the scene, he asked the Defendants to transport him home, (4) that although the Defendants told Walters they would not transport him the 40 miles or so to his home in Lancaster, they would be willing to transport him to a nearby hotel, and (5) that it is policy for every person being transported in the rear of the police vehicle to be restrained behind the back for safety purposes—we cannot find that the Defendants should have known that their conduct infringed upon statutory or constitutional mandates. *Crouse v. South Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009) ("The

qualified immunity inquiry requires an examination of whether, taking the evidence in the light most favorable to the plaintiff, the defendant should have known that his or her actions contravened statutory or constitutional guarantees."). Moreover, we cannot find that the alleged unlawfulness of the Defendants' conduct was apparent based upon the law as it existed at the time of their conduct, nor would it have been apparent to reasonable officers in the Defendants' position that the challenged conduct was indeed unlawful.   As the United States Court of Appeals for the Third Circuit has explained, "[t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest."   *Baker v. Monrow Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995).   Thus, we recommend that summary judgment also be granted in the Defendants' favor with respect to Walters' claims for false arrest and false imprisonment on the basis that qualified immunity is appropriate in this context.   *See Wiers v. Barnes*, 925 F. Supp. 1079, 1089 (D. Del. 1996) (finding that defendant, who had transported plaintiff while handcuffed, was entitled to qualified immunity even if conduct violated the Fourth Amendment, where acts were such that a reasonable officer could have committed them).[6]

---

[6] Although the Defendants raise an additional argument that Baluh should be dismissed as a defendant for lack of personal involvement in the alleged wrongs, we need not address this argument as we have found that both Defendants are entitled to judgment as a matter of law with respect to all of Walters' remaining claims.  Similarly, we need not address Walters' arguments concerning claims that have already been dismissed by this Court, including various state law claims and

## V. Recommendations.

Based on the foregoing, **IT IS RECOMMENDED** that the Defendants'

motion (*doc. 43*) for summary judgment be **GRANTED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the recorddeveloped before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **11th** day of **January**, **2015**.

> ***S/Susan E. Schwab***
> Susan E. Schwab
> United States Magistrate Judge

---

claims of illegal search and seizure, conspiracy, malicious abuse of process, malicious prosecution, and failure to intervene. *See doc. 19* at 37.